Metzler v. Loyola University Chicago is on for argument next. Good morning, Your Honors. May it please the Court. Jonathan Sirleck on behalf of the Appellant Matthew Metzler. In granting Loyola's motion for summary judgment, the District Court erred by failing to apply this Court's Title IX precedent and by failing to properly apply well-established summary judgment rules. In Dovey v. Perdue, this Court did away with doctrinal tests such as erroneous outcome, selective enforcement, deliberate indifference, and archaic assumptions and stated that, quote, all these categories simply describe ways in which a plaintiff might show that sex was a motivating factor in the university's decision. Not the, but a motivating factor. Perdue held, and subsequent Seventh Circuit cases confirm, that one of the ways a plaintiff like Metzler can take his case to a jury is by combining evidence of pressure on a university to, quote, signal a commitment to cracking down on campus sexual assault with facts from his specific case that create an inference that Loyola treated him differently because of his sex. Those facts. Mr. Thurber, may I interrupt? What are the very, the very best indications that any errors or irregularities were tied to gender bias rather than negligence or incompetence? To me, it seems like a somewhat different situation from the circumstances in, you know, Doe versus Perdue University, where there really were some very, very serious indications of possible bias. Well, I think here there are extremely significant indications of bias, and I think the strongest evidence is, there are several strong pieces of evidence, but you can't divorce what happened in the case and what, and Mr. Love's omission of the key piece of evidence from the case. You can't divorce that from the pressure on him to signal a crackdown on campus sexual assault, and that would take, let a reasonable jury conclude that it wasn't just negligence, it wasn't an oversight, but there was some other motivational factor. I mean, Loyola doesn't even argue that it was negligence. They don't claim that he just made an honest mistake, and all the other things were honest mistakes. The deletion of the audio recording can't be, you know, there's, they had two, in 2016 and 2017, they had eight investigations, and in seven of those, the audio recording of the respondent was preserved, and only one was the audio recording deleted, and that was Metzler's. So this case... But why does that imply sex discrimination? Well, what implies sexual discrimination, there's a couple things. Number one is the pressure on Tim Love and Loyola is, at the time that this is all going on... No, you, I want to be clear. You were just emphasizing that there were eight recordings in different cases, and seven were preserved, and one was deleted. Why was the deletion of one a reason to infer sex discrimination? Your Honor... But other things, like the environment in which the university is deciding, and outside pressure, are the same across all cases. So I'm trying to figure out why, in your view, the deletion of one out of eight is evidence of sex discrimination. Sure. Judge, I think you have to look at a holistic view and look at all of the evidence, and it's not just campus, it's not just the general atmosphere of pressure. Here you have specific facts of specific pressure being made on Loyola, and Tim Love in particular. And Tim Love... No, I'm not asking about the nature of the outside pressure. You're asking us to infer sex discrimination from the deletion of one recording out of eight. That's where you lose me. Why is that a basis? And what I'm saying, Your Honor, is it's improper to look at each piece of evidence in isolation and say, and do exactly what the district court here and said, well, you have to show that this piece of evidence, this irregularity was as a result of sex bias, of gender. And here we have a litany of things that Tim Love did, and the inference in this case is that Tim Love confronted with this recording and confronted with a litigation hold letter, and it mysteriously disappears, and Loyola cannot give an explanation as to why it disappeared. Raises an inference that one of those reasons is an improper one, and that's gender bias. It's just like... Why necessarily gender bias? Why not just total incompetence here? Well, certainly, Judge, maybe Loyola below, if the case were to go to trial, would argue... Counsel, Judge Rovner is not in that screen. The camera is actually right in front of you. I apologize. Thank you. That might be a great argument for Loyola to make at trial that, hey, we didn't discriminate against Metzler based on his gender. We were just incompetent. But to date, Loyola has not made that argument. And there are so many egregious errors in this case that Loyola committed that it takes it outside of the realm. Is it your argument, then, that just you lump together these errors, and those errors alone or the number of them, that's enough to create an inference? That's one thing. And there's two other things I should highlight as well. There's two other decision makers, Brian Howes, who was on the panel, who exhibited classic gender bias. When Brian Howes was... He testified that he believed that Jane was... One of the reasons that he believed that Jane was telling the truth before he ever heard any testimony from either one of them, when he read the final investigative report, he said that he believed that Jane was telling the truth because he couldn't imagine that she would engage in the sex acts at issue because she was sexually inexperienced. But at the same time, Howes didn't know Matt Metzler's level of sexual experience and didn't care to ask. And to this day, he doesn't know Matt Metzler's sexual experience. And that is applying an archaic notion of gender roles, that sexually inexperienced women would never engage in oral sex, but a man, no matter what his level of sexual experience, would. And that infected this proceeding. Why is that gender versus victim? Well, because he didn't say victim. And with respect to victim, I think the most powerful reason that this isn't pro-victim, and maybe that is one possible explanation, but Purdue doesn't say that we have to eliminate all possible explanations. In fact, in Purdue, the Dear Colleague letter is written to explain that both men and women can be perpetrators. But they didn't say that you have to show that it's anything more in terms of gender. And requiring more, it seems to me, would require a smoking gun, like Tim Love to admit that says, I didn't do this, I did this because I don't like men. We're just never going to have that. More particularly, this isn't pro-victim in terms of the community standards, the procedures that were applied that may be tilted toward pro-victim or against respondents. That's not this case. This is lopsided errors that only went one way. Jane presumably knew what she told Rabia Khan-Harvey, that she previously said that she didn't believe that she was forced or coerced into sexual activity, but neither the board nor Metzler knew that she said that, and that's withheld from him. One of the key factors in Purdue was the fact that the university had a significant motive, namely the allegation that they were going to lose federal funds. That allegation isn't here. What's the significant motive? There's two, and they're both here. Number one, the university's witnesses testified, they were well aware of the office of civil rights investigation list, and it was their job to stay off that list. Number two, at the time, literally at the very week before this hearing, the investigation and the hearing is going on, people are protesting and picketing the university based on their handling of these Title IX cases, including all the groups that were led by females, including the Students for Reproductive Justice, and they're calling for Tim Love to be fired. In addition, I think the day before the hearing, there was a story that made national news about Loyola allowing a male on the golf team to stay on campus, even though he had been accused of rape in Georgia. And here, there's the individual groups that are all led by women putting pressure on the university, and Jane herself is putting pressure on Love, meeting with Love, telling that she's part of a group that's offering to write a letter in support of the university. She then, they then write that letter, and then when she finds out that Matt Metzler was still on campus, she writes an email to Tim Love reminding him, and a thinly veiled threat to say, we're going to withdraw that previous support. That seems very different than the significant financial pressure of losing all federal funds. Well, I don't think Purdue is that limited to say it only can be significant financial pressure on losing all federal funds. That's one. And two, this is even more case-specific pressure. This is pressure on an individual who is putting his thumb on the scale at every turn, being pressured by groups led by women, threatening his job. And that seems to be even more concrete than possibly losing federal funding. And then one last thing is, Tim Love, his absence of the ability to give any credible explanation as to why he omitted the Conharvey memo is itself evidence of discrimination. You know, we asked Love why he omitted the Conharvey note, and he couldn't provide an alternative, not even a protectional one. It was the, you know, the, I like to refer to it as the immaculate omission. Excuse me, if the decision was ultimately based on Jane's lack of consent rather than on coercion or force, why would Jane's statement to Conharvey be important, excluding that evidence would be harmless, wouldn't it? Judge, this case was, first of all, Love didn't know that at the time that he excluded it. Secondly, this case from the beginning considered force and coercion. Tim Love told Matt Messler that the case concerned force and coercion. The coach's report that Love elected to include in the final investigative report says Jane felt pressured beyond what she felt comfortable doing. That practically detracts the university's definition of coercion. So, it's a complete fiction. It's frankly one that Loyola made up in response to this case because it's indefensible that Love didn't include the statement from Rubia Conharvey that Jane did not feel like she was forced and coerced into sexual activity. And the only way they can defend this is to rewrite the record. They use, I think, the word permission 34 times in their brief. And the word permission doesn't appear anywhere or maybe very limited times, either in the hearing or in the decision letter itself. This case always concerned force and coercion. But going back to Tim Love's lack of his ability to give an explanation, the Supreme Court in Reeves v. Sanderson said proof that a defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is pro-intentional discrimination. So, not only does Love not offer that, oh, no, I was just acting pro-victim, a jury can supply the motive by his absence of being able to answer the question. And I see I only have a minute and 40 left, so I'll reserve the rest for Robert. Certainly, Counsel. Mr. Land. Good morning, Your Honor, and may it please the Court. Peter Land on behalf of Defendant Appelli Loyola, University of Chicago. Judge Seeger's opinion and decision about summary judgment was correct. He correctly applied the three decisions from this court that existed at the time. He made that decision three years ago, and it's consistent with the three decisions from this court involving Title IX gender bias assessments that have come since that time. Those three later decisions being Southern Indiana, Indiana University, and the GAS decision. Taken together, those six opinions describe a standard to determine and evaluate, is there any gender bias at issue when a school evaluates a disciplinary matter and disciplines a student? First, ask the question. I would like you to help me. Could you give us very specific examples of evidence that would be sufficient to survive summary judgment in a case like Metzler's? Give us examples of, you know, gender, what you think it would be, gender discrimination. It's a very broad question, and all of these cases involve very specific factual circumstances, so that's a little bit challenging. Well, I'm thinking about this case. About not all cases, this case. What would he have had to do? If, for example, he had been asked questions during the hearing of, don't you think that women would not understand that just moving ahead with the various sexual acts you engaged in, would be something they should resist, and shouldn't you have asked, because you're a man, shouldn't you have asked for permission? That could be an example. If, or if he had evidence of specific pressure being placed on the university to lose funds that LOVE knew about, that the hearing panel who decided it knew about, and that they had some meeting to talk about, what are we going to do about whether we're holding enough men responsible for sexual misconduct? Anything like that could potentially be, would be, evidence that might support gender discrimination claims. Anything else? I'm sure I could think of, if I sat, I think I could probably talk about that for 15 minutes, my whole time, about what different types of evidence could support. Oh, I don't want to start. Why don't you give me one minute or two minutes? I'd be very grateful. Okay, if, if one of the hearing panel members said, I don't believe that you did that, I don't believe that you asked for permission because all men approach sexual activity in the same way, and you're not describing that in the way that men do. Okay, well you said that one before. What's the second one? If, for instance, like in Purdue, none of the hearing panel members had read any of the final investigative report and weren't paying attention and still decided that they thought that he was not credible because no one who's not had sex with someone before who's a woman would ever do what Jane allegedly did. Those are just examples that come to mind, none of which are present here. I, I think that, you know, the standards that have been set by this court for evaluating whether gender bias exists when there are not examples like that or that are gender-based specific is a pretty high bar to proving gender bias from actions that are on their face not connected to gender. The two examples of areas that might be considered are where there are a significant amount of procedural irregularities such that it seems that it was a proxy for gender bias. They weren't trying to actually move through the right process. We're not trying to engage with the facts of that particular case, but engaged in procedural elements that were unfair to a degree that means it's hiding gender bias. Or, as in the Purdue case, a perplexing decision on the merits, in that case making a credibility assessment without ever speaking to or hearing from the Jane in that case. Why wouldn't the failure to interview John's two witnesses here when you interviewed Jane's qualify under that argument? In this instance, the investigators interviewed witnesses who knew something about the sexual misconduct itself. They interviewed Jane's witness because Jane had told her about what happened in the room, not that she was there. John's witness was there. John's witness was not in the room. John's witness was in the living room that was next door. But John said he was present at the apartment. Yes, and there was no indication that he knew anything about what actually happened in the bedroom where they were. For instance, there's no indication that John told him that. That's the example. But those witnesses saw the two of them. They may have seen or heard something that would have been helpful to him, but he never got that opportunity. I mean, they absolutely refused. Loyola refused to allow the two male witnesses. You know, Loyola withheld the statement that Jane Doe did not believe she had been coerced. There was unbelievable pressure from the women's groups on campus. The recordings in this one case somehow were erased. Maybe I can start with the last issue, the recording deletion. In the year 2016 to 2017, in 11 of the 19 cases at Loyola, recordings were deleted. It's not unusual. The policy that they had allowed for deletion and didn't require maintaining those audio recordings of interviews. And they also explained why. The policy explained that the recordings of interviews were only to be used to prepare the final investigative report, not for any purpose beyond that. That's specifically in their policy. So the fact that there are deletions of audio recordings is not itself unusual in this case, nor around that time, nor do I think it has any gender bias inference that can be drawn from it. Why are your statistics so different from Mr. Sirleck? Mr. Sirleck says one out of eight. You say 11 out of 19. Are you both using the same time frame? I don't believe he's using the same time period. I think he's just using a time period of, if I heard him right, 2015 to 2016. He's previously said in briefs that, I believe, four respondent audio interviews were not maintained in that semester, that fall semester of 2016. What I'm reciting to you is a year, 2016 to 2017, in 19 cases, 11 involved deletion of audio recording. It was a matter of practice for them not to maintain them in all cases. It was part of their policy that it wasn't required for reasons that they explained. As far as the Khan-Harvey notes and the question about whether force and coercion were actually an issue in this case, I think it's worth noting that what I heard Mr. Sirleck say was that Loyola is now rewriting the record by indicating that this case did not involve deciding whether there was force or coercion. He said something about how the decision letter didn't reference permission. The decision letter references the absence of permission for every instance where there was non-consensual sexual misconduct found that Mr. Metzler was expelled for. It's in the letter. It's in the letter's explanation of what policy definitions were being considered by the hearing board. They reviewed the consent definition. They quoted the permission section. They explained why they were analyzing it and they explained what their decision was based on. What is not in the decision letter and was not considered are the definitions of force or coercion. Those definitions involve things like physical violence, threat, intimidation, or unreasonable pressure, the degree of pressure. There's no assessment in the decision letter of those definitions or of those concepts or of their application to this case. There's nothing saying that there wasn't pressure or there was pressure. There wasn't unreasonable pressure or there weren't threats or there wasn't intimidation. There's nothing. In the hearing itself, there are not probing questions about those questions either. Jane references when she felt pressured or when she felt like she gave in to something. But that wasn't what they were evaluating. Was it unreasonable pressure or was it a threat or intimidation? The only place where this was evaluated, the only place, which is a different context which is important to understand, is when Con Harvey was talking to Jane. When Con Harvey was talking to Jane, it was at a point where Jane had not yet decided that she wanted to initiate a complaint that would be investigated. Instead, she was saying, I'm reporting this issue, it's concerning to me. And under their policies and practices, and as Title IX regs required at the time, Con Harvey was talking to her to determine, is there a threat of safety to others or to you? Con Harvey was the one asking the questions about the topics I was just referencing. She was asking Jane, are you feeling threatened? Are you feeling unsafe? Did he hold you down? Did he give you repeated orders or pressures or intimidation? That comes from Con Harvey's testimony in this case, that those would be the kinds of questions she was asking Jane. And the reason she was asking was to determine not whether this was something that happened, but to determine is there a safety threat risk that the university would need to proceed with an investigation even though Jane didn't want to. So Con Harvey was the one asking those questions. Based on her discussion with Jane, she wrote down her impression that Jane does not feel that she was forced and coerced. That was never an issue that the hearing panel evaluated. And it's in every document that they generated that you can find that they focused on their decision on permission and not on coercion or force. So the reason that matters is that Jane never said anything inconsistent with the idea that she wasn't forced or coerced. She can talk about, she did talk to a coach who reported that she felt pressured, she did talk about giving in. But that's not necessarily the same thing as unreasonable pressure or of threats or of intimidation. And the hearing board evaluated whether there was permission, whether she agreed to do certain things. And what they found was that there were several things that John just, I'm sorry, that Mr. Metzler just proceeded with. He didn't ask. He just, including touching, and excuse me for the language, but touching her clitoris with his hand, rubbing her clitoris with his penis. Examples where he didn't, there was no conversation about this, he just did it. There wasn't any question about pressuring her at the time to do that or pushing her to do that, he just did it. And that's what the board was evaluating and that's how they described their evaluation and deposition testimony as well, which is entirely consistent with the decision letter. So the idea that there's a rewriting of the record by Loyola to avoid a gender bias inference from not producing the Khan-Harvey notes elevates the Khan-Harvey notes to something they're not. It was a mistake. They should have provided those notes as they would provide any notes of anyone speaking to a complainant at any point in time. But as Chair of the Board Landis testified, those notes are consistent with what Jane said in the hearing. They're not inconsistent. So it's not some material omission that creates a gender bias inference because the whole case would have changed had those notes been part of the record. I guess I would speak a little bit about the pressure question and the nature of the pressure. We say this in our briefs, but I think it's important to note that the question about firing Tim Love, the pressure that was being applied publicly about that had to do with him losing a case or not proceeding with a case administratively within their office. It was not about how they weren't finding men responsible and they needed to for sexual misconduct. And there is case law cited in our briefs about how the kind of pressure that leads to an inference of gender bias includes decision makers knowing that there's pressure to find men responsible and then caving to that pressure. I believe in our prior oral argument in front of this panel there was an assessment or thought about what you need as pressure that involves the administration or the university caving. There's no evidence of any caving. There's no evidence that Landis or any other members of the hearing panel or the appellate officer even knew about that pressure, much less that Love tried to influence their decision. Thank you. Thank you, Mr. Land. Anything further, Mr. Sherlock? Yes. With all respect to my colleague, he gave a great closing argument where he's asking to draw all the facts in the light most favorable to Loyola and all the inferences from those facts in the light most favorable from Loyola and that you can't do on summary judgment. In the decision letter, whether force or coercion is an issue, let me just read the decision letter. Quote, the presence or lack of coercion is a foundational component of determining whether consent was present for a sexual interaction. And now they want to stand up here and say that's not a fact issue. There's other things in the decision letter. They find that Metzler physically forced, they used the word forced. Jane's hand onto Mr. Metzler's genitalia. The discussion of sexual penetration, again, not to be graphic, but these acts, some of them only could have occurred without consent if there were force or pressure. For example, Jane touching herself. Not Matt Metzler touching Jane, but Jane touching herself and Jane performing oral sex on John. And more fundamentally, Tim Love believed this case concerned force and coercion and yet he didn't put the statement in the final investigation report. Lastly, Mr. Love at the beginning in answer to Judge Robner's questions about, they seem to indicate that we have to have a smoking gun. That we have to have a confession and that's just not the law. Secondly, with respect to the discussion of the Purdue case, that is this case. Jessica Landis believed Jane before, used her as the benchmark for counsel. Thank you.